**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| ECOMM INNOVATIONS, LLC,<br><br>               Plaintiff,<br><br>      v.<br><br>LEVI STRAUSS & CO.,<br><br>               Defendant. | Case No. 4:26-cv-381<br><br>JURY TRIAL DEMANDED |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiff eComm Innovations, LLC ("eComm Innovations") files this Complaint against Levi Strauss & Co. ("Levi's", "LS&Co." or "Defendant") for infringement of United States Patent Nos. 7,409,635; 7,657,458; 7,752,081; 7,761,343; 7,765,470; 7,822,646; 7,881,975; and 8,266,007 (the "Patents-in-Suit") (Exhibits A-H), and alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

**<u>THE PARTIES</u>**

2.      eComm Innovations is a limited liability company organized under laws of the State of Georgia with its principal place of business situated at 12540 Broadwell Road, Suite 2201, Milton, Georgia 30004.

3.      Upon information and belief, Levi's is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business located at 1155 Battery Street, San Francisco, CA 94111.

4.      Levi's maintains multiple regular and established places of business in this judicial district. As shown, these locations include: (1) 820 E. Stacy Rd., Ste. 308, Allen, TX, 75013 and (2) 7701 Windrose Avenue F145, Plano, TX, 75024.



*See* https://locations.levi.com/en-us/tx/.

5.      Levi's may be served with process through its registered agent, The Prentice-Hall Corporation System, Inc., located at 211 E. 7th Street Suite 620, Austin, TX 78701, or anywhere it may be found.

6.      Levi's sells and offers to sell products and services throughout Texas, including in this judicial district, as well as throughout the United States, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States.

7.     Levi's owns and controls all applicable websites, including www.levi.com/US/en_US/, and the Levi's mobile application. *See*, *e.g.*, https://www.levi.com/US/en_US/legal/privacy-policy.

8.     Levi's has made, used, offered to sell and/or sold products and services, including the following specifically accused products and services: (1) Levi's Mobile Apps;[1] (2) the Levi's website;[2] (3) Levi's online shopping services;[3] (4) Levi's Rewards;[4] (5) Levi's Community ("*AS SEEN ON YOU*");[5] (6) current or legacy products or services, which use, or have used, one or more of the foregoing products and services as a component product or component service; (7) combinations of products and/or services comprising, in whole or in part, two or more of the foregoing products and services; and (8) all other current or legacy products and services imported, made, used, sold, or offered for sale by Levi's that operate, or have operated in a substantially similar manner as the above-listed products and services. (As used herein, one or more of the foregoing products and services are individually and collectively referred to as the accused "Levi's Products and Services").

9.     Levi's, as well as the hardware and software components comprising the Levi's Products and Services and/or that enable the Levi's Products and Services to

---

[1] *See*, *e.g.*, https://apps.apple.com/us/app/levis-shop-denim-more/id1481624020; https://play.google.com/store/apps/details?id=com.levistrauss.customer.

[2] *See*, *e.g.*, https://www.levi.com/US/en_US/.

[3] *See*, *e.g.*, https://www.levi.com/US/en_US/cart.

[4] *See*, *e.g.*, https://www.levi.com/US/en_US/red-tab-program.

[5] *See*, *e.g.*, https://www.levi.com/US/en_US/.

operate, including but not limited to servers, server software, webserver software, webserver hardware, website client software, mobile computing device client application software, networked communications hardware, network routers, network switches, network hubs, WIFI access point hardware, WIFI access point software, point-of-sale hardware, point-of-sale software, back-end hardware, back-end software, cloud-based software, cloud-based hardware, and other hardware and software computing systems and components (individually and collectively referred to herein as the accused "Levi's System"), infringes literally and/or under the doctrine of equivalents at least one claim of each of the Patents-in-Suit.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Levi's because it committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. § 271(a). In particular, Levi's has made, used, offered to sell access to, and/or sold access to the accused Levi's Products and Services in the Eastern District of Texas, and has made, used, offered to sell access to, and/or sold access to the Levi's System in the Eastern District of Texas.

11.     Levi's is subject to the Court's jurisdiction because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to the accused Levi's Products and Services provided to individuals and businesses in the Eastern District of Texas.

12.     Levi's infringes the Patents-in-Suit in the Eastern District of Texas, at least, by making, using, offering to sell access to, and/or selling access to the accused Levi's Products and Services in the Eastern District of Texas, and by making, using, offering to sell access to, and/or selling access to the Levi's System.

13.     Levi's operates multiple places of business throughout this judicial district.



*See* https://locations.levi.com/en-us/tx/.

14.     On information and belief, Levi's customers located in the Eastern District of Texas have obtained access to and used the accused Levi's Products and Services and/or the Levi's System while located in the Eastern District of Texas.

15.     On information and belief, Levi's customers located in the Eastern District of Texas have been exposed to advertising for the accused Levi's Products and Services while being physically located in the Eastern District of Texas including but not limited to, at Levi's regular and established places of business that are located in the Eastern District of Texas.

16.     The Court has personal jurisdiction over Levi's at least because it has continuous business contacts in the State of Texas and in the Eastern District of Texas;

5

Levi's has engaged in business activities including transacting business in the Eastern District of Texas and purposefully directing its business activities, including the use of the Levi's Products and Services and/or Levi's System in the Eastern District of Texas to aid, abet, or contribute to the infringement of third parties in the Eastern District of Texas.

17.    This Court has personal jurisdiction over Levi's because, *inter alia*, Levi's: (1) has committed acts of patent infringement in this Eastern District of Texas; (2) maintains regular and established places of business in the Eastern District of Texas; (3) has substantial, continuous, and systematic contacts with this State and the Eastern District of Texas; (4) owns, manages, and operates facilities in this State and the Eastern District of Texas; (5) enjoys substantial income from its operations and sales in this State and the Eastern District of Texas; (6) employs Texas residents in this State and the Eastern District of Texas, and (7) solicits business using the Levi's Products and Services and Levi's System in this State and the Eastern District of Texas.

18.    Levi's solicits Texas-based customers for its infringing products and services, including Levi's Products and Services in the State of Texas and in this Judicial District.

19.    Levi's directly and indirectly infringes at least one claim of the Patents-in-Suit in the State of Texas, including but not limited to within this Judicial District.

20.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Defendant has multiple locations in this district as listed on Levis.com, regularly transacts business in this district, and has directly committed acts of patent infringement in this district.

## BACKGROUND FACTS

21.     On September 22, 2025, through its counsel eComm Innovations sent a letter ("September 2025 Letter") and a draft complaint ("Draft Complaint") by email to Mr. Jedrzejek in his role as Senior Vice President and General Counsel of Levi's and Mr. Onda in his role as Chief Counsel for Global Intellectual Property. The September 2025 Letter is attached as **Exhibit I**. The September 2025 Letter and Draft Complaint were sent to Levi's for the purpose of placing Levi's on notice of its patent infringment. In the September 2025 Letter, Levi's was invited to participate in discussions regarding a license to allow its continued use of eComm Innovations' patented technologies.

22.     On information and belief, Mr. Jedrzejek received a copy of the September 2025 Letter and Draft Complaint by email to his Levi's email address, djedrzejek@levistrauss.com.

23.     On information and belief, Mr. Onda  received a copy of the September 2025 Letter and Draft Complaint by email to his Levi's email address, thomas@levistrauss.com.

24.     On information and belief, Mr. Jedrzejek and/or Mr. Onda received a copy of the September 2025 Letter and Draft Complaint via FedEx on or about September 22, 2025.

25.     On October 14, 2025, through the email of the undersigned counsel, eComm Innovations followed up on the September 2025 Letter and Draft Complaint by email sent to Mr. Jedrzejek's and Mr. Onda's Levi's email address. *See* **Exhibit J**.

7

26.     On information and belief, Mr. Jedrzejek and Mr. Onda received the follow-up email sent on October 14, 2025.

27.     On January 14, 2026, eComm Innovations followed up on the September 2025 Letter and Draft Complaint through an email sent to Ms. Michelle Gass, in her capacity as Levi's President and Chief Executive Officer. *See* **Exhibit K**.

28.     On information and belief, Ms. Gass received the follow-up email sent to her email address, michellegass@levistrauss.com, on January 14, 2026.

29.     As of the date of filing this Complaint, Levi's has not responded to the September 2025 Letter, the October 14, 2025 email, or the January 14, 2026 email sent on behalf of Comm Innovations.

30.     On information and belief, at all relevant times, Mr. Jedrzejek has served, and continues to serve as the Senior Vice President and General Counsel of Levi's. https://www.linkedin.com/in/davidjedrzejek/.

31.     On information and belief, at all relevant times, Mr. Onda has served, and continues to serve as the Chief Counsel – Global Intellectual Property of Levi's. https://www.linkedin.com/in/thomas-mandel-onda-327970/.

32.     On information and belief, at all relevant times, Ms. Gass has served, and continues to serve as the President & Chief Executive Officer of Levi's. https://www.linkedin.com/in/michellegass/.

**United States Patent No. 7,409,635**

33.     On August 5, 2008, the USPTO duly and legally issued United States Patent No. 7,409,635 ("the '635 Patent") entitled "Display/Layout Methods and Apparatuses Including Content Items and Display Containers" to inventor Samuel S. Epstein.

34.     The '635 Patent is presumed valid under 35 U.S.C. § 282.

35.     eComm Innovations owns all rights, title, and interest in the '635 Patent.

36.     eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '635 Patent.

37.     The '635 Patent identifies persistent technical shortcomings in prior computerized layout systems for web publishing. Despite advances in computing, existing publishing technology "continue[d] to suffer from a number of disadvantages preventing users from fully realizing the benefits that may flow from advances in computing and related technology." '635 Patent at 1:20-25. For example, conventional web layouts could not dynamically accommodate varying content sizes or differing display dimensions without degrading the layout. '635 Patent at 1:25-33.

38.     Many web sites "continue[d] to be unable to allow display of content items of different sizes, such as advertisements of different sizes, to appear in a given position within a Web page, without incurring unacceptable layout effects, such as overlapping of content items, internal wasted space, unreadable text, and so forth." '635 Patent at 1:25-33. Traditional fixed-width or template-based designs also failed to make full use of available screen space. Web pages authored with small, fixed dimensions would display without a scroll on small monitors, but "clients with larger displays [would] have unused

real estate" because those pages "cannot take full advantage of available area of client browser windows to display advertisements." '635 Patent at 1:34-50, 14:65-15:7, and Fig 8.

39.     When content overflowed the designed layout, prior systems resorted to clumsy scrolling mechanisms. '635 Patent at 1:51-59 ("Current Web technology provides facilities to allow scrolling in the display window, for the users to access the information that did not fit in the display window. Specifically, Web browsers provide horizontal and/or vertical scrollbars in situations where a Web page to be displayed is larger in at least one dimension than the Web browser window.") These conventional techniques— fixed slots for content, rigid templates, and scrollbars for overflow—often resulted in wasted screen space, disjointed presentations, or hidden content, underscoring the need for a more adaptive technical solution. '635 Patent at 1:51-2:44.

40.     Claim 1 of the '635 Patent is directed to a specific computer-implemented solution that improves the way Web layouts are automatically generated, thereby overcoming the above-described shortcomings. In particular, Claim 1 recites a "processor implemented method for automated layout of a plurality of content items" that uses a computerized layout generator to intelligently arrange content. '635 Patent at Claim 1 (16:20-35). The claimed method does not follow a hard-coded template or static rules, but instead performs an iterative, criteria-driven layout process. First, the layout generator "form[s] … an inner-outer display entity pair" consisting of an inner display entity and an outer display entity, "the outer display entity being a display container, and the inner display entity being a selected one of said content items and another display container."

*Id*. In other words, the system dynamically pairs a content item (or a nested container of items) with a candidate container region, defining a potential placement of content within a container. The claim then requires the layout generator to evaluate this candidate placement by either "accepting or rejecting placement … of the inner display entity into the outer display entity based at least in part on one or more layout placement criteria." *Id*. These "layout placement criteria" are explicit rules or constraints (*e.g.* relating to fit, space utilization, etc.) that the generator uses to determine if the proposed content-container pairing is suitable. If the placement fails to meet the criteria (for instance, if it would cause overflow or wasted space), it is rejected; if it satisfies the criteria, it is provisionally accepted.

41.    Claim 1 further recites "repeating" the forming and evaluating steps "at least one other time if layout of the content items is incomplete and another inner-outer display entity pair can be formed." '635 Patent at Claim 1 (16:20-35). The layout generator thus continues this loop, iteratively selecting new inner content and outer container pairs and testing them, until all content items have been placed into the evolving layout. This claimed process transforms the way layouts are generated. Instead of using predetermined templates or manual adjustments, the computer automatically builds the layout step-by-step based on defined technical criteria, ensuring an optimized arrangement for the specific mix of content and display containers at hand.

42.    The solution in Claim 1 of the '635 Patent is a concrete technological improvement in how computers display information. By dynamically forming nested container pairs and intelligently accepting or rejecting placements, the claimed invention

11

enables flexible, optimized use of user interface screen space that was not possible with prior art techniques.

43. The '635 Patent explains that its approach allows a set of content items to be displayed in a given region such that nothing is cut off or requires scrolling – "The present invention permits a set of content items that's compatible with a display region to be displayed in the display region so that all content is visible without scrolling." *See* '635 Patent at 7:26-43. In contrast to earlier systems where large content or additional items would simply extend beyond the visible area (forcing the user to scroll or miss content), the claimed layout generator automatically apportions content into available display containers to ensure everything is presented within the window. This computer-driven arrangement directly addresses the prior technical problem of hidden or scrolled content, effectively improving the human-computer interaction by presenting all information at once in an organized manner.

44. The '635 Patent is directed to a method that specifically improves how different-sized content items are incorporated into layouts, eliminating the overlap, truncation, and whitespace issues that plagued conventional template-based designs. In prior systems, content of non-standard dimensions would either not fit or would leave awkward gaps, as noted above. The patented layout generator, however, intelligently pairs content with containers of an appropriate size and evaluates placements using criteria such as fit and space utilization, thereby avoiding those failures. The patent illustrates this improvement by showing that the same web page which produced "severe layout problems" under fixed templates (when advertisements of new sizes were

12

substituted) can be automatically re-laid-out by the invention without those problems. *See*, *e.g.*, '635 Patent at Fig. 9a-9c.

45.     In the '635 Patent's claimed invention, advertisements and other content items are not confined to fixed slots. Instead, the layout generator can resize or reflow containers to accommodate them. Indeed, the patent emphasizes that, "advertisements aren't constrained to fit in fixed-size slots within fixed layouts." '635 Patent at 15:65-16:2. This dynamic adaptability is a technical improvement in computer layout generation, yielding presentations that are both more efficient (maximizing use of space) and more visually coherent than was achievable using prior techniques.

46.     Claim 1 of the '635 Patent is directed to an ordered combination of elements. For example, the layout generator operating in an inner/outer pairing loop with defined placement criteria, which was not a routine or conventional approach in the field, but rather an inventive departure from prior art practices. Rather, conventional web layout tools relied heavily on static templates and fixed container hierarchies. For example, the '635 patent notes that earlier authoring models and content-serving systems "are all limited by their reliance on variants of the template model." '635 Patent at 2:35-44.

47.     In stark contrast, the invention claimed by the '635 Patent avoids the template-based paradigm altogether in favor of its rule-driven, generative layout process. The specification expressly touts "[o]ne of the distinguishing characteristics of the present invention" as being that it "works without templates", and as a result "it can efficiently generate larger ranges of layouts than what's possible with template-based approaches." '635 Patent at 5:43-49. Eliminating the template constraint was a non-conventional

13

approach that unlocked significantly greater flexibility in layout outcomes. Moreover, the '635 Patent describes a "search-based algorithm" to layout generation which is distinguished over "prior art deterministic approaches" which "produce poor quality layouts in many cases" '635 Patent at 13:37-14:20. Moreover, the specification discloses that the layout generator can operate using a multi-threaded approach. '635 Patent at 12:41-61, Fig. 4, cl. 24. The claimed method thus embodies an "inventive concept" by using a specific, computer-implemented technique (iterative inner-outer container pairing with placement criteria) that diverges from and improves upon the well-known, routine methods (pre-defined templates, fixed slots, etc.) used in the industry at the time of the invention. This inventive framework was designed to address the core technical challenges of layout generation (efficiency, adaptability, and quality of results) in a non-conventional way.

48.     The claims of the '635 Patent are directed to a specific technical solution to a technical problem in the field of computerized content layout. The claim does not merely recite an abstract idea or result, but rather a detailed method that improves how a computer system functions to arrange and display information on a screen. The claimed layout generator's iterative pairing and criteria evaluation process yields a tangible improvement in computer display technology – for example, utilizing available screen space more fully and preventing undesirable layout effects (hidden content, overlap, wasted space) through an automated technique grounded in computer functionality. Further, the claim elements, both individually and in combination, constitute significantly more than standard computer operations. They incorporate inventive

14

concepts, including for example, an unconventional rules-based layout mechanism (free of traditional templates) that was not well-understood, routine, or generic in the field.

<div align="center"><u>**United States Patent No. 7,657,458**</u></div>

49.     On February 2, 2010, the USPTO duly and legally issued United States Patent No. 7,657,458 ("the '458 Patent") entitled "Vendor-Driven, Social-Network Enabled Review Collection System and Method" to inventor Hermann Calabria.

50.     The '458 Patent is presumed valid under 35 U.S.C. § 282.

51.     eComm Innovations owns all rights, title, and interest in the '458 Patent.

52.     eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '458 Patent.

53.     The '458 Patent identifies specific problems rooted in computer networks. For example, the lack of trustworthiness in conventional online review platforms. The '458 patent explains that many internet reviews cannot be fully trusted because sellers or affiliated persons often post biased or fake reviews, making it impossible to tell the good reviews from the biased reviews. As a result, "the entire notion of using reviews to make a purchase decision becomes less useful than it could be" and "there is no existing system that provides trusted relevant reviews to consumers." '458 Patent at 1:37-48. In other words, prior to the '458 Patent, review systems on the internet did not have any technical mechanism to ensure the authenticity and reliability of user-submitted reviews.

54.     At the time of the invention, the "status quo" for online review providers was to accept unverified, voluntary reviews without verifying the reviewer's purchase. '458 Patent at 10:17-25. The patent notes that this conventional approach "invites

fraudulent negative reviews by competing merchants, as well as fraudulent positive reviews written by the merchants about themselves." *Id*. In short, conventional review systems were not only inadequate to solve the authenticity problem, they actively facilitated false or misleading reviews due to the lack of any technical verification measures.

55.    To overcome these issues, the '458 Patent introduces a "vendor-driven, social-network enabled review collection system" that uses specific technological mechanisms to ensure review authenticity and relevance. *See* '458 Patent at Title. For example, the invention "fully integrat[es] a social network with a review system to provide trusted reviews based on social network connections." '458 Patent at 1:15-22.  In addition, the patent claims a unique "locator code" system to verify that each review corresponds to a real transaction by the user. *See, e.g.*, '458 Patent at Claim 1. This code, which is stored as part of the system's locator code information in a database, serves as a technological authenticity token for a review. *Id.* When the customer later visits the review system's website, "the locator code causes the database to retrieve the identity of the subject [vendor], [and] any transaction-level information including the person's name" associated with that code. '458 Patent at 7:60-67. The system then automatically presents the user with an electronic review form specific for that transaction. *See, e.g.*, '458 Patent at Claim 1. In this manner, the claimed review engine ensures that only a bona-fide customer can submit a review tied to that specific transaction, thereby technically enforcing authenticity and preventing imposters from posting false reviews.

56.     As a further example, Claim 1 of the '458 Patent is directed to an apparatus that embodies the above solution. In particular, Claim 1 requires "a database that contains reviews and reviews information, locator code information, subject information, and user information" and "a computer system configured to instantiate a review engine server" *Id*. The claimed review engine server is configured to provide "first information" to a user (which "includes at least a review form") and to receive "second information" back from the user (which "includes at least a locator code") and store it in the database, "further wherein said locator code references a unique transaction." '458 Patent at cl. 1. In other words, the claim recites a specific combination of computer components, including for example, a structured database holding multiple categories of information (reviews, subjects, users, and unique locator codes), and a server computer programmed to interact with users through review forms and to capture user inputs including the unique locator code that links a review to a particular transaction. The "locator code" is not a generic piece of data but a specific identifier that the system uses to look up transaction details and verify the review's legitimacy, as described above. By integrating these elements, Claim 1 defines a distributed computer system that goes beyond the mere idea of collecting reviews, instead implementing a particular mechanism (review forms with transaction-specific codes stored and verified in a database) to solve the stated technical problem of review authenticity.

57.     The claimed system achieves marked technical improvements in the functionality of review platforms, especially with respect to authenticity, relevance, and data management, that were not present in prior systems.  For example, when a user

17

submits a review via the patented system, the user is "already pre-validated as a user who has made a bona-fide purchase from that seller" (through the required locator code), which "eliminates the possibility of a fraudulent or false review, thereby increasing the overall faith that users will place on the system." '458 Patent at 9:31-36.

58.     The '458 patent teaches that reviews submitted with locator codes can be flagged or marked as verified/pre-validated, giving readers confidence that each such review comes from an actual transaction. *Id*. This stands in contrast to the old, conventional review systems that had no way to distinguish genuine reviews from fakes. Additionally, by storing subject information, user information, and social-network data in the database, the system can personalize and filter reviews in ways that improve the relevance of presented reviews for each reader.  Indeed, the review engine server of the '458 Patent includes specialized sub-components, including for example, a social network engine, rate and rank engine, credentials engine, and privacy engine, which work together to sort and filter reviews based on the reviewer's social connections, credibility, and other criteria. *See, e.g.*, '458 Patent at 2:3-10, Fig. 1.



FIG. 1

59.     The rate and rank engine, for instance, calculates social distance and final rankings of reviews for the user, ensuring that the most relevant and trusted reviews, such as those authored by the reader's connections or verified purchasers, are displayed. '458 Patent at 11:45-57. These are not generic computer operations, but purposeful computational functions addressing the internet-centric problem of information overload and mistrust in user-generated content.

60.     The solutions embodied in the claims of the '458 Patent were unconventional at the time of the invention and represent more than a mere automation of known practices. For example, the patent specification makes clear that existing review systems did *not* employ anything like the claimed locator code verification or social-

network integrated filtering – to the contrary, "there is *no existing system* that provides trusted relevant reviews to consumers" prior to this invention. '458 Patent at 1:45-47. By requiring a unique transaction-specific code and a tailored review engine server, Claim 1 covers an inventive concept that was not well-understood, routine, or common in the industry. As noted, earlier systems allowed any user to post unverified reviews (the "*status quo*"), which inherently invites fraudulent, positive or negative reviews from those with ulterior motives. '458 Patent at 10:17-25. The '458 Patent breaks from that routine practice by introducing a new technological framework that enforces authentication of reviews and leverages computer-implemented social networking features. The claimed combination of a multi-faceted database (storing reviews, users, subjects, and locator codes) and a programmed server that dynamically provides review forms and validates locator codes was a specific and unconventional arrangement of components – one that yields a technical system appreciably different from the prior art.

61.     Far from being an abstract idea, Claim 1 recites a specific technical solution implemented via computing components to improve the security and trustworthiness of online review collections. The inventors did not merely seek to automate a manual process, but rather designed a networked system that solves a problem unique to e-commerce and online platforms (ensuring authentic, relevant reviews) through technical means.

62.     Accordingly, Claim 1 of the '458 Patent is directed to patent-eligible subject matter, as it provides a non-abstract technological improvement and includes an inventive combination of features that was unconventional in the field.

**United States Patent No. 7,752,081**

63.    On July 06, 2010, the USPTO duly and legally issued United States Patent No. 7,752,081 ("the '081 Patent") entitled "Social-Network Enabled Review System with Subject-Owner Controlled Syndication" to inventor Hermann Calabria.

64.    The '081 Patent is a continuation of the '458 Patent and shares a specification with the '458 Patent.

65.    The '081 Patent is presumed valid under 35 U.S.C. § 282.

66.    eComm Innovations owns all rights, title, and interest in the '081 Patent.

67.    eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '081 Patent.

68.    The '081 Patent addresses the specific technical challenge of enabling subject-owners (*e.g.*, merchants) to control how their reviews are selected, processed, and presented to users through a review-provider server, while preserving review credibility.

69.    For example, Claim 1 of the '081 Patent recites a computer-controlled method implemented in a review-provider server comprising: (1) receiving a review request for a reviewed subject associated with a requesting user; (2) selecting a review of the reviewed subject "dominated by a subject-owner"; (3) applying "one or more functions to said review, said one or more functions controlled by said subject-owner"; and (4) sending the review for presentation to the requesting user, "wherein sending said review is responsive to said review request and said one or more functions." '081 Patent at Claim 1.

21

70.     The claimed method provides a technically specific mechanism for subject-owner-controlled review syndication that was unconventional at the time of the invention. The specification explains that the system allows subject-owners to apply filters "specific to the syndication channel" (*e.g.*, reviews appearing on the merchant's website versus third-party sites versus advertisements), "specific to how the review was submitted" (*e.g.*, via locator code versus unsolicited), and "specific to the user-author of such review." '081 Patent at 16:3-31. This granular, subject-owner-controlled filtering and function-application architecture, where the review-provider server applies merchant-defined processing rules before presenting reviews to end users, was not a well-understood, routine, or conventional approach in the field. The claimed combination of server-side review selection, subject-owner-controlled function application, and conditional review delivery represents an inventive concept that goes beyond generic computer operations.

### United States Patent No. 7,761,343

71.     On July 20, 2010, the USPTO duly and legally issued United States Patent No. 7,761,343 ("the '343 Patent") entitled "Social-Network Enabled Review System with Subject Identification Review Authoring Form Creation" to inventor Hermann Calabria.

72.     The '343 Patent is a continuation of the '458 Patent and shares a specification with the '458 Patent.

73.     The '343 Patent is presumed valid under 35 U.S.C. § 282.

74.     eComm Innovations owns all rights, title, and interest in the '343 Patent.

75. eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '343 Patent.

76. The '343 Patent claims a detailed, eight-step computer-controlled method that addresses the specific technical problem of verifying review authenticity through transaction-linked locator codes and dynamically generating customized review forms.

77. Claim 1 of the '343 Patent recites a method comprising: (1) receiving a locator code associated with a user; (2) determining a subject identification from that locator code; (3) preparing a review authoring form responsive to the subject identification; (4) sending the form to the user; (5) receiving review information from the user; (6) creating a review from that information; (7) marking the review as associated with the locator code; and (8) storing the review in a database. '343 Patent at Claim 1. Each of these steps is performed by a specific "review submission system," and the steps are ordered in a particular sequence that enforces review authenticity at each stage.

78. This claimed process represents a concrete technological improvement over conventional review systems. Prior to the '343 Patent, conventional review platforms accepted unverified reviews from any user, which the patent describes as the "*status quo*" that "invites fraudulent negative reviews by competing merchants, as well as fraudulent positive reviews written by the merchants about themselves." '343 Patent at 10:46-58. The claimed method overcomes this by using the locator code as a technological authenticity token. The system derives the subject identification directly from the code, dynamically generates a customized review form tied to that specific transaction, and marks the resulting review as verified. This end-to-end verification pipeline was not a routine or

conventional approach in the online review industry and constitutes an inventive concept that yields a system appreciably different from the conventional prior art "*status quo.*" *See Id.*

**United States Patent No. 7,765,470**

79.     On July 27, 2010, the USPTO duly and legally issued United States Patent No. 7,765,470 ("the '470 Patent") entitled "Display/Layout Methods and Apparatuses Including Content Items and Display Containers" to inventor Samuel S. Epstein.

80.     The '470 Patent is a continuation of the '635 Patent and shares a specification with this patent.

81.     The '470 Patent is presumed valid under 35 U.S.C. § 282.

82.     eComm Innovations owns all rights, title, and interest in the '470 Patent.

83.     eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '470 Patent.

84.     The '470 Patent claims a solution to, at least, the same technical problems addressed by the '635 Patent. Unlike the '635 Patent's method claim, Claim 1 of the '470 Patent recites a specific structural architecture comprising a processor, a "display pair formation module operated by the processor to successively form one or more display pairs to place a content item in a display container to form a display unit for automated layout of a plurality of content items in a display presentation," and "an acceptance or rejection module operated by the processor to successively accept or reject placement of the selected one of a content item and a display container into a display container, based at least in part on one or more layout placement criteria." '470 Patent at Claim 1.

85.     The claimed apparatus embodies a concrete technological improvement in how computers organize and present content. By requiring distinct, processor-operated modules, (one for forming display pairs and another for evaluating and accepting or rejecting placements) Claim 1 recites a specific machine architecture, not an abstract concept. The specification explains that these modules operate in a coordinated manner to generate optimized layouts without relying on pre-defined templates, thereby overcoming the limitations of conventional systems that "are all limited by their reliance on variants of the template model." '470 Patent at 2:42-51. This modular architecture, with its division of labor between pair-formation and acceptance/rejection functions, was not a routine or conventional design in the field of web content layout and represents an inventive concept that is significantly more than the abstract idea of arranging content on a display.

### United States Patent No. 7,822,646

86.     On October 26, 2010, the USPTO duly and legally issued United States Patent No. 7,822,646 ("the '646 Patent") entitled "Social-Network Enabled Review System with Subject-Owner Controlled Syndication Management" to inventor Hermann Calabria.

87.     The '646 Patent is a continuation of the '458 Patent and shares a specification with the '458 Patent.

88.     The '646 Patent is presumed valid under 35 U.S.C. § 282.

89.     eComm Innovations owns all rights, title, and interest in the '646 Patent.

90.    eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '646 Patent.

91.    The '646 Patent addresses the specific technical challenge of enabling review content to be credibly and seamlessly syndicated across third-party websites while preserving the legitimacy and authenticity of that content. The specification teaches that the system is "designed to allow the subject-owners of any review to syndicate or broadcast their reviews through third parties, in a user-friendly and unrestricted fashion, but in a manner that preserves the legitimacy and authenticity of the review." '646 Patent at 1:57-2:9; 2:63-3:15.

92.    Claim 1 of the '646 Patent recites a specific, multi-step technical solution implemented within a review-provider server. In particular, the claim requires receiving a review request that is "responsive to processing of a client-side script" by the user's computer, where that client-side script was "caused to be received by said first networked computer by a networked third-party server." '646 Patent at Claim 1. The claim further requires the review-provider server to select and send reviews responsive to the request. This three-party architecture, in which a third-party server delivers a client-side script to a user's device, the script triggers a separate request to the review-provider server, and the review-provider selects and returns reviews is a technically specific distributed computing solution. At the time of the invention, this coordinated multi-server content delivery approach was unconventional.  Rather, typical websites either served all content from a single server or required users to navigate to separate sites for review information. The claimed method's use of client-side scripts to bridge content servers and review-

26

provider servers represents an inventive concept that improves the functionality of web content delivery in a non-conventional manner.

### United States Patent No. 7,881,975

93.     On February 1, 2011, the USPTO duly and legally issued United States Patent No. 7,881,975 ("the '975 Patent") entitled "Methods and System Using Client-Side Scripts for Review Requests" to inventor Hermann Calabria.

94.     The '975 Patent is a continuation of the '458 Patent and shares a specification with the '458 Patent.

95.     The '975 Patent is presumed valid under 35 U.S.C. § 282.

96.     eComm Innovations owns all rights, title, and interest in the '975 Patent.

97.     eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '975 Patent.

98.     The claims of the '975 Patent address technical challenges in web content delivery, including but not limited to integrating user-generated review content from a remote review server into third-party websites in real time, while preserving the credibility and relevance of that content.

99.     For example, the patent teaches that once reviews are collected, the system enables "the review to be easily distributed to an unlimited number and variety of different websites, devices, and other media," with the presentation of reviews "customized to the media, website, or device being used by the requesting user." *See* '975 Patent at 12:64–13:14. By allowing reviews to be distributed in this manner, the invention ensures that third-party sites can display up-to-date, user-specific review information

27

without compromising authenticity. Indeed, the patent explicitly states that the system is designed to let subject owners broadcast their reviews through third-party websites "in a manner that preserves the legitimacy and authenticity of the review." '975 Patent at 3:3–9. These features frame the invention as a specific technical solution to the technical problem of seamlessly sharing and personalizing review content across different networked platforms.

100. To achieve this solution, the '975 Patent discloses a particular networked system architecture in which a web server delivers content together with embedded client-side code that triggers a separate data fetch for reviews. In an exemplary embodiment, when a user visits a third-party website, that site's server returns the usual page content "but as part of its content it delivers a client-side script (such as JavaScript) … that will initiate contact between the requesting user's browser … and the review-provider's server." *See* '975 Patent at 13:15-29; *see also* '975 Patent at Claim 1 (22:43-46); Fig. 9.

101. In other words, the claimed invention specifies that the webpage from the content server contains a small program that runs on the user's device after the page loads. The patent explains that this client-side script causes the user's own computer (*e.g.*, through the browser) to reach out to the separate review-provider server for additional review information related to the page content. By embedding this functionality into the delivered page, the invention uses the distributed computing capabilities of the client device and multiple servers to dynamically combine content from two different sources, which helps solve trust problems inherent in the prior-art.

102.    The '975 patent describes that, once executed in the user's browser, the client-side script transmits a tailored review request to the review provider's server. Notably, this transmitted request includes contextual and user-specific data that enable the review content to be personalized. For example, the patent teaches that the script-initiated communication "includes, if available from a previously stored persistent or semi-persistent cookie in the requesting user's browser, the requesting user's unique identity." '975 Patent at 13:30–13:32. In response, the review-provider server retrieves the appropriate reviews from its database and computes each review's social relevance to the specific requesting user. The '975 Patent further explains that the review server "retrieves the reviews from its database, computes a 'social distance' of each selected review's user-author with respect to the requesting user, and then returns the list of reviews, sorted and presented at least in part by the 'social distance.'" '975 Patent at 13:36-40.

103.    The claims of the '975 Patent correspond to this coordinated multi-server technique for delivering personalized content. For example, Claim 1 recites a method performed by a networked server that includes receiving a user's content request, preparing corresponding content, and accessing "a client-side script executable by said first networked computer to send a review request for a reviewed subject to a review-provider server." '975 Patent at Claim 1 (22:37-50). The claim further requires sending that client-side script to the user's computer for execution, and sending the prepared content information for presentation to the user. *Id.* In practical terms, the claimed server provides the user's device with both the regular page content and the special client-side code, where the code is configured to cause the user's device (the "first networked

29

computer") to initiate a review query to a different server (the review-provider). This division of labor is precisely what the '975 Patent's specification describes. For example, the content server delivers the base page and embedded script, and the review-provider server, in turn, handles the separate review request triggered by that script. Thus, the claim language of the '975 Patent covers a technically specific network implementation involving multiple computing entities and specifically programmed instructions, rather than an abstract idea.

104.    The end result of the claimed invention is a seamless, dynamic integration of third-party review content into the original website's page, improving the functionality of the webpage by making it personalized and up-to-date without additional user action. The '975 Patent illustrates that after the review-provider server returns the filtered reviews to the user's browser, "the review content is merged with the content" already on the page, and the requesting user perceives that all of the information is coming from the original (third-party) site. '975 Patent at 13:40-41. Therefore, although the source of the review data is different, the user's experience is unified.

105.    The details in the '975 Patent demonstrate that the claimed approach was an unconventional solution, not a mere automation of known manual processes or a generic use of the Internet. At the time, typical websites would either serve all content from a single server or require users to navigate to a separate site for reviews. In contrast, the '975 invention splits the content delivery between a content server and a review server and uses the client device as an active participant in fetching and assembling the final page. This distributed processing is implemented in a specific way, including for

example, by embedding a client-side script in the served content to facilitate direct inter-server communication from the user's browser.

106. The inventions claimed in the '975 patent solve various technological problems inherent in the then-existing web content delivery processes, allowing content such as user-generated reviews to be delivered credibly and reliably.

**United States Patent No. 8,266,007**

107. On September 11, 2012, the USPTO duly and legally issued United States Patent No. 8,266,007 ("the '007 Patent") entitled "Methods and Systems for Delivering Customized Advertisements" to inventor Hermann Calabria.

108. The '007 Patent is a continuation of the '975 Patent and '458 Patent and shares a specification with these patents.

109. The '007 Patent is presumed valid under 35 U.S.C. § 282.

110. eComm Innovations owns all rights, title, and interest in the '007 Patent.

111. eComm Innovations has not granted Levi's approval, authorization, or license to the rights under the '007 Patent.

112. The claims of the '007 Patent are directed to a concrete technical improvement in computer-implemented advertising for social network users. For example, the patent addresses specific problems in online content delivery, including for example, the lack of trust and relevance in user-generated reviews and recommendations. As the specification explains, many internet reviews "cannot be fully trusted" because sellers often post biased or fake reviews, making it "at best difficult, and usually impossible, to tell the good reviews from the biased reviews." '007 Patent at 1:45-55. This

31

undermined the usefulness of online reviews for consumers. In fact, as noted in the '007 Patent, "the entire notion of using reviews to make a purchase decision becomes less useful than it could be." *Id.* Prior to the invention, "there [was] no existing system that provide[d] trusted relevant reviews to consumers." *Id.* Claim 1 is rooted in this technological context and tackles these issues of reliability and personalization in network-based content delivery.

113.    Conventional online platforms did not ensure that the information presented to users (such as product reviews or ads) came from credible or personally relevant sources. The '007 Patent describes that users browsing e-commerce sites were presented with generic reviews or advertisements that could be written by unknown or biased parties. *Id.* This lack of a trust mechanism meant users could not easily distinguish authentic content from false or biased content, eroding their confidence in online recommendations. In short, the technical challenge was how to provide each user with content (*e.g.*, advertisements or reviews) that they can trust as relevant and genuine, by leveraging information about that user's personal social connections.

114.    The claims of the '007 Patent provide specific technological solutions to improve the trust and relevance of online advertisements by dynamically tailoring ads to the user's own social network. For example, Claim 1 requires the "selecting, by the server, a member of the social network to visibly associate with the advertisement based, at least in part, on a social distance between the user." *See* '007 Patent at Claim 1. In other words, the claimed invention finds a person from the user's network who is socially "close" to the user and who is relevant to the advertisement, and then visibly links that person to

the advertisement content. This use of the user's own social connections to augment the ad is a concrete technical feature that improves the quality of the content delivered to the user.

115. The '007 Patent's specification emphasizes the technical benefits of this socially-customized advertising approach. By incorporating the "'social distance' metric" (the degree of closeness between users in a social network) into the content selection process, the system significantly improves the relevance and credibility of the information presented. In one example, documents or search results can be sorted not only by traditional relevance criteria but also by social distance, an approach that "significantly increases the value of the documents retrieved, since the trust level of the source of the documents [is] higher." *See, e.g.,* '007 Patent at 7:19-27, Claim 8. In the context of the claims of the '007 Patent, the advertisement is no longer a generic message; it is a customized communication that includes input from a socially proximal source. This specific configuration solves the stated problem of untrusted content by making the advertisement more personalized and trustworthy to the recipient. Such an improvement is not an abstract outcome but a direct enhancement of computer-mediated communication. In other words, the server delivers a tailored advertisement that the user is more likely to trust and find relevant, something that was not achievable with prior generic online advertising techniques.

116. Before the '007 Patent, advertising platforms and social networks were siloed, because there was no mechanism for an advertising system to utilize a user's social graph (*e.g.,* friends and degrees of separation) in real time when selecting which ad to

show. The '007 Patent is explicitly aimed at "fully integrating a social network with a review system" (and by extension with advertising content) to provide more trusted, relevant information to users. '007 Patent at 1:25-28. In conventional systems, advertisements were selected based on general demographics or browsing behavior, but not based on the user's relationships within a social network. The patent recognized this as a technical shortcoming and introduced a system architecture to bridge that gap.

117.    The claims of the '007 Patent are not directed to an abstract idea, but to a specific improvement in the field of networked content delivery. The claim's focus is on particular technological solutions, including for example, using quantified social-distance data to customize the content of an advertisement for a specific user. This is a solution rooted in computer networking, because it requires the server to perform automated calculations and data lookups across a social graph and an advertising repository to assemble a tailored message. The improvements provided by the claims of the '007 Patent are fundamentally technical, enhancing how a computer system selects and presents information to users, rather than an "idea" that could be performed in the human mind or with pen and paper.

118.    For example, the steps of Claim 1 depend on complex interactions between a user's device, a social network database, and an ad server, operating in concert to produce a new kind of personalized output. The record confirms that the invention "considered [the user's social] relationship when presenting the reviews" or ads to the user, thereby achieving a level of trust and personalization not found in existing manual or basic computerized methods. *See e.g.,* '007 Patent at 2:51-3:1.

119.    Moreover, Claim 1 recites an unconventional combination of features that go beyond routine use of computers. At the time of the invention, no prior system combined social-network relationship data with advertisement delivery in the manner of Claim 1. *See* '007 Patent, 1:45-55. The patent's background surveys various online review and e-commerce sites and notes that "there is no existing system" providing the kind of "trusted relevant reviews" enabled by the invention. *See* '007 Patent at 1:32-55. By integrating a "social distance" metric into the advertisement selection process, Claim 1 implements a solution that was neither well-understood nor routine in the industry. This is not a generic use of a computer to display an ad, but a specific data-driven technique that yields a new functionality, including ads personalized with a socially connected contact's endorsement. The patent had to devise a specialized data structure and algorithms (the social network engine 40 and review engine 38) to calculate social distances and filter content accordingly:



FIG. 1

*See* Fig 1.

120.   Such features reflect an "inventive concept" that transformed standard advertising displays into a socially-informed, trust-enhanced presentation through a series of concrete computational steps. The unconventional nature of this approach is underscored by the patent's technical field, which highlights the novelty of "fully integrating a social network with a review system," something that was not achieved or conventional in prior systems. *See* '007 Patent, 1:25-55.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 7,409,635

121.   eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

122.    Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '635 Patent.

123.    One or more components of the Levi's System employed and provided a method implemented by a processor for automated layout of a plurality of content items.





*See*, *e.g.*, screenshots showing various web browser layouts of www.levi.com/US/en_US/.

124.    One or more components of the Levi's System employed and provided a method comprising forming by a layout generator operated by a processor, an inner-outer display entity pair (*e.g.*, code blocks used in hierarchical manner) having an inner display entity and an outer display entity (*e.g.*, an outer code block such as <section> block, <div> block, etc.), the outer display entity being a display container, and the inner display entity being a selected one of one of said content items and another display container.



```
          </div>
        </div>
      </div>
      <!---->
    </div>
    <!---->
    <!--]-->
  </div>
  <!--]-->
  <!---->
  <!--]-->
</div>
</section>
```

*See*, *e.g.*, screenshots from source of www.levi.com/US/en_US/ showing <div>, <a> and <picture> blocks contained within other <div> blocks and <section> block.

125. One or more components of the Levi's System employed and provided a method comprising accepting or rejecting placement by the layout generator of the inner display entity into the outer display entity based at least in part on one or more layout placement criteria (*e.g.*, aspect ratio, min-width, height, @media rules, padding, etc.).

```
▾<section class="layout-section lsco-row lsco-row-xs--center nobgcolor -bg-section-transparent" section_label="US_25_Sep_Seasonal" data-v-f07eb4e4 data-v-a748f585 data-v-b2951488> flex
   <!---->
   <!---->
  ▾<div class="section-content lsco-col-xs-25 lsco-col-md-25 lsco-col-lg-25" data-v-b2951488>
     <!--[-->
     <!---->
     <!--[-->
    ▾<div data-lsco-cms-module-id="blt04ac9d4214a320d9" class="cmsmodule module_media_overlay_v2" data-v-a748f585>
       <!--[-->
       <!---->
      ▾<div class="module-media-overlay" _content_type_uid="module_media_overlay_v2" data-v-a748f585 data-v-4dac81db>
        ▾<div class="media-background media-block-background" data-v-4dac81db data-v-b28b0e2b>
          ▾<div class="media-background__inner-container fixed-aspect-ratio" style="--aspect-ratio-mobile: 4 / 5; --aspect-ratio-tablet-desktop: 16 / 9;" data-v-b28b0e2b>
            ▾<a href="/US/en_US/c/levi_clothing_icons_us" class="link-wrapper link-routable cms-media show-mobile background-media" style="color:;aspect-ratio:4 / 5;" tabindex="0" transparency="false" hlsvideourl duration=
               <!--[-->
               <!--[-->
              ▾<picture class="responsive-picture fixed" style="aspect-ratio:4 / 5;" data-v-b2783b57 data-v-6d7c60c0>
                 <!--[-->
                 <source type="image/webp" media="(min-width: 1500px)" srcset="https://lscoglobal.scene7.com/is/image/lscoglobal/25_H2_SPM_ICONS_AU…t=webp&qlt=70&resMode=sharp2&fit=crop,1&op_usm=0.6,0.6,8&wid=2000&hei=2500
                 <source type="image/webp" media="(min-width: 1025px)" srcset="https://lscoglobal.scene7.com/is/image/lscoglobal/25_H2_SPM_ICONS_AU…t=webp&qlt=70&resMode=sharp2&fit=crop,1&op_usm=0.6,0.6,8&wid=1500&hei=1875
                 <source type="image/webp" media="(min-width: 767px)" srcset="https://lscoglobal.scene7.com/is/image/lscoglobal/25_H2_SPM_ICONS_AU…t=webp&qlt=70&resMode=sharp2&fit=crop,1&op_usm=0.6,0.6,8&wid=1025&hei=1282 1
                 <source type="image/webp" media="(min-width: 420px)" srcset="https://lscoglobal.scene7.com/is/image/lscoglobal/25_H2_SPM_ICONS_AU…fmt=webp&qlt=70&resMode=sharp2&fit=crop,1&op_usm=0.6,0.6,8&wid=767&hei=959 1
                 <source type="image/webp" media srcset="https://lscoglobal.scene7.com/is/image/lscoglobal/25_H2_SPM_ICONS_AU…fmt=webp&qlt=70&resMode=sharp2&fit=crop,1&op_usm=0.6,0.6,8&wid=420&hei=525 1x, https://lscoglobal
                 <!--]-->
                 <img class="responsive-img fixed" alt="Black and white still of Shaboozey and Matty Matheson in our Icons" aria-label="Image of Black and white still of Shaboozey and Matty Matheson in our Icons" src="https
               </picture>
```



*See*, *e.g.*, screenshots from source of www.levi.com/US/en_US/ showing aspect ratio such as 4/5, 16/9, etc., and min-width such as 1500px, 1025px, 767px, 420px, etc.

<style>.spinner-loading-skeleton[data-v-1251378b]{height:2500vh;background-image:url(/ngsa/images/loading.gif);background-size:98px 43px;background-position:center;background-attachment:fixed;background-repeat:no-repeat}.client-only-view-loading[data-v-f5fb87fa]{min-height:100vh}.page-not-found{min-height:60vh;text-align:center}.page-not-found__wrapper{display:flex;flex-direction:column;align-items:center;justify-content:center;padding:20px 0}.page-not-found--message{color:#000;text-transform:uppercase;font-family:InterstateWGL-Black,Helvetica,Arial,sans-serif;letter-spacing:.04em;font-size:24px;line-height:24px}.-bg-dark .page-not-found--message,.-bg-section-dark .page-not-found--message,.-bg-page-dark .-bg-section-transparent .page-not-found--message{color:#fff;fill:#fff}@media (min-width: 768px){.page-not-found--message{font-size:calc(24px + 16 * (100vw - 768px) / 672);line-height:calc(24px + 16 * (100vw - 768px) / 672)}}@media (min-width: 1441px){.page-not-found--message{font-size:40px;line-height:40px}}.page-not-found--message{letter-spacing:.02em}.page-not-found--sub-text{padding-top:36px;font-size:16px;… @media (min-width: 768px){.utility-bar__inner-wrapper[data-v-47c8737d]{height:100%}}@media (min-width: 1025px)…

*See also*, source of www.levi.com/US/en_US/ showing @media rules, font size criteria, height criteria, padding criteria for the container.

126.    One or more components of the Levi's System employed and provided a method comprising repeating said forming and said accepting or rejecting at least one

other time if layout of the content items is incomplete and another inner-outer display

entity pair can be formed.



*See e.g.,* www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 and screenshot of source code. The source code indicates that

multiple inner-outer display entity pairs are repeatedly formed, and content placement

is done, if layout of the content items is incomplete.



*Compare* www.levi.com/US/en_US/clothing/men/shirts/camp-shirt/p/004PF0001

and screenshot of source code.

127.    Levi's directly infringed at least claim 1 of the '635 Patent in violation of 35

U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's

Products and Services; and making, using, selling, selling access to, importing, offering

for sale, and/or offering to sell access to the Levi's System.

128.   eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

### Count II – Infringement of United States Patent No. 7,657,458

129.   eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

130.   Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '458 Patent.

131.   One or more components of the Levi's System comprises an apparatus (*e.g.*, server operated and/or controlled by Levi's) comprising a database that contains reviews and reviews information, locator code information (*e.g.*, an order number/ID, transaction number/ID, transaction record, token, etc.), subject information, and user information.







*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058  showing review summary and reviews on

www.levi.com/US/en_US/ from the Levi's System.

45

**YOUR PERSONAL INFORMATION**

**How We Collect, Use, and Share Your Personal Information**

We collect data when you interact with us at different touchpoints, including information that can directly or indirectly identify you (your "**Personal Information**"). As a consumer goods company, we use Personal Information for a variety of business purposes including sharing it and combining it with other information we might receive from our wholesale, retail and franchise partners, technologies, and other third parties. This section details the kinds of Personal Information we collect, how we use it, and describes the third parties with whom we share Personal Information. Take care to review our "**SUPPLEMENTAL NOTICES**" section below to check for additional information that may apply to you based on your location.

▼ **CONTACT INFORMATION:**                                                                                                                          -

This includes identifying information like names, email addresses, phone numbers, shipping/billing/physical addresses, online identifiers you share in a public forum (like your social media handles) or nicknames.

---

We store your Personal Information on the basis of applicable law and retain it as required to satisfy the purpose for which the data is processed, unless a longer period is required for purposes such as complying with retention obligations, record keeping or other commercial requirements.

*See, e.g.*, https://www.levi.com/US/en_US/legal/privacy-policy showing what user information is collected by Levi's.





*See also* Screenshots from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing a review form and what information is collected by Levi's while submitting the review.



*See also* Screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing the review guidelines.

132.    One or more components of the Levi's System comprises an apparatus comprising a computer system configured to instantiate a review engine server that provides a first information (*i.e.*, a review form) to a user (*e.g.*, a reviewer) and receives a second information (*e.g.*, review information with user identification information) from said user and stores at least some of the second information in the database, wherein said first information includes at least a review form, and said second information includes at least a locator code (*e.g.*, an order number/ID, transaction number/ID, transaction

48

record, token, product ID, SKU ID, etc.), and further wherein said locator code references a unique transaction.





*See also* Screenshots from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing a review form and what information is collected by Levi's while submitting the review.



*See also* Screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing the review guidelines.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058  showing "verified" reviews on https://www.levi.com/US/en_US/ from the Levi's System.

## YOUR PERSONAL INFORMATION

### How We Collect, Use, and Share Your Personal Information

We collect data when you interact with us at different touchpoints, including information that can directly or indirectly identify you (your "**Personal Information**"). As a consumer goods company, we use Personal Information for a variety of business purposes including sharing it and combining it with other information we might receive from our wholesale, retail and franchise partners, technologies, and other third parties. This section details the kinds of Personal Information we collect, how we use it, and describes the third parties with whom we share Personal Information. Take care to review our **"SUPPLEMENTAL NOTICES"** section below to check for additional information that may apply to you based on your location.

▼ **CONTACT INFORMATION:**                                                                                                                    -

This includes identifying information like names, email addresses, phone numbers, shipping/billing/physical addresses, online identifiers you share in a public forum (like your social media handles) or nicknames.

We store your Personal Information on the basis of applicable law and retain it as required to satisfy the purpose for which the data is processed, unless a longer period is required for purposes such as complying with retention obligations, record keeping or other commercial requirements.

*See, e.g.,* https://www.levi.com/US/en_US/legal/privacy-policy showing what user information is collected by Levi's.

133. Levi's directly infringes at least claim 1 of the '458 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

134. eComm Innovations has been damaged by Levi's infringement and has suffered and continues to suffer damages as a result of this infringement.

### Count III – Infringement of United States Patent No. 7,752,081

135. eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

136. Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '081 Patent.

137. One or more components of the Levi's System employed and provided a computer controlled method implemented in a review-provider server.

# REVIEWS







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews summary.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

```
<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>
```

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.

138.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of receiving by the review-provider server a review request for a reviewed subject (*e.g.,* a reviewed product), said review request associated with a requesting user.







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews summary and reviews on

www.levi.com/US/en_US/ for a reviewed product.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing the reviewed product.

Object.defineProperty(window, "\_\_LSCO_ENV\_\_", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.

139.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of selecting by a review selector module of the review-provider server  a review of said reviewed subject responsive to said review

request, said review dominated (*e.g.*, by configuration) by a subject-owner (*e.g.*, Levi's or any merchant associated with Levi's).







*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.



*See*, *e.g.*, screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing the reviewed product.

Object.defineProperty(window, "\_\_LSCO_ENV\_\_", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching the product reviews.

140.  One or more components of the Levi's System employed and provided a computer controlled method comprising the step of applying by the review-provider server one or more functions to said review (*e.g.*, marking the review as "verified"), said one or more functions controlled by said subject-owner.





*See*, *e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching the product reviews.

141.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of sending by the review-provider server said review for presentation to said requesting user, wherein sending said review is responsive to said review request and said one or more functions.

64







*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching the product reviews.

142.     Levi's directly infringed at least claim 1 of the '081 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

143.     eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

### Count IV – Infringement of United States Patent No. 7,761,343

144.     eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

145.     Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '343 Patent.

146.     One or more components of the Levi's System employed and provided a computer controlled method comprising the step of receiving by a review submission system a locator code (*e.g.,* an order number/ID, transaction number/ID, transaction record, token, etc.) associated with a user.





*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058  showing "verified purchase" reviews. The review is tagged as

"verified" by using the locator code (*e.g.*, an order number/ID, transaction number/ID,

transaction record, token, etc.).

147.   One or more components of the Levi's System employed and provided a computer controlled method comprising the step of determining by the review submission system a subject identification (*e.g.*, product identification) from said locator code (*e.g.*, an order number/ID, transaction number/ID, transaction record, token, etc.).



*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058  showing review summary and reviews for a product.

148.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of preparing by the review submission system a review authoring form responsive to said subject identification (*e.g.,* product identification), said review authoring form configured to collect review information from said user.





*See also* Screenshots from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing a review form.

149.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of sending by the review submission system said review authoring form to said user for completion.

71





*See also* Screenshots from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing a review form for completion by a user.

150.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of receiving by the review submission system said review information from said user responsive to said review authoring form.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058  showing submission of review information by the user.





*See*, *e.g.*, screenshots from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058  showing published reviews information.

151. One or more components of the Levi's System employed and provided a computer controlled method comprising the step of creating by the review submission system a review from said review information.

75





*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058  showing published reviews.

152.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of marking by the review submission

system said review as associated with said locator code (*e.g.*, marking the review as "verified" review).



*See*, *e.g.*, screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing verified reviews.

153.   One or more components of the Levi's System employed and provided a computer controlled method comprising the step of storing by the review submission system said review in a database.



*See*, *e.g.*, screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing verified reviews on https://www.levi.com/US/en_US/ from the Levi's System.

154.    Levi's directly infringed at least claim 1 of the '343 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

155.    eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

### Count V – Infringement of United States Patent No. 7,765,470

156.    eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

157.    Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to,

78

imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '470 Patent.

158. One or more components of the Levi's System comprised an apparatus (*e.g.*, server operated and/or controlled by Levi's) comprising a processor.

159. One or more components of the Levi's System comprised an apparatus (*e.g.*, server operated and/or controlled by Levi's) comprising a display pair formation module (*e.g.*, a CSS layout engine, Javascript rendering engine, and/or server-side content management system that generates HTML structure), operated by the processor to successively form one or more display pairs to place a content item in a display container (*e.g.*, <div> block, <a> block, <picture> block, <section> block, etc.) to form a display unit for automated layout of a plurality of content items in a display presentation, wherein each display pair has a display container (*e.g.*, <div> block, <a> block, <picture> block, <section> block, etc.) and a selected one of said content items and another display container, wherein each display container has a size and a shape, resulting in each display unit having a size and a shape corresponding to the size and shape of the outermost display container (*e.g.*, an outer code block such as <section> block, <div> block, etc.) of the display unit.





*See, e.g.,* screenshots showing various web browser layouts of www.levi.com/US/en_US/.



```
          </div>
        </div>
      </div>
      <!---->
    </div>
    <!---->
    <!--]-->
  </div>
  <!--]-->
  <!---->
  <!--]-->
 </div>
</section>
```

*See*, *e.g.*, screenshots from source of www.levi.com/US/en_US/ showing <div>, <a> and <picture> blocks contained within other <div> blocks and <section> block. Also, the source code shows aspect ratio such as 4/5, 16/9, etc., and min-width such as 1500px, 1025px, 767px, 420px, etc.

```
<style>.spinner-loading-skeleton[data-v-1251378b]{height:2500vh;background-
image:url(/ngsa/images/loading.gif);background-size:98px 43px;background-
position:center;background-attachment:fixed;background-repeat:no-repeat}.client-
only-view-loading[data-v-f5fb87fa]{min-height:100vh}.page-not-found{min-
height:60vh;text-align:center}.page-not-found__wrapper{display:flex;flex-
direction:column;align-items:center;justify-content:center;padding:20px 0}.page-not-
found--message{color:#000;text-transform:uppercase;font-family:InterstateWGL-
Black,Helvetica,Arial,sans-serif;letter-spacing:.04em;font-size:24px;line-height:24px}.-
bg-dark .page-not-found--message,.-bg-section-dark .page-not-found--message,.-bg-
page-dark .-bg-section-transparent .page-not-found--
message{color:#fff;fill:#fff}@media (min-width: 768px){.page-not-found--
message{font-size:calc(24px + 16 * (100vw - 768px) / 672);line-height:calc(24px + 16 *
(100vw - 768px) / 672)}}@media (min-width: 1441px){.page-not-found--message{font-
size:40px;line-height:40px}}.page-not-found--message{letter-spacing:.02em}.page-not-
found--sub-text{padding-top:36px;font-size:16px;… @media (min-width:
768px){.utility-bar__inner-wrapper[data-v-47c8737d]{height:100%}}@media (min-
width: 1025px)…  m          5gt5t y6ul/;oōp[
```

*See also*, source of www.levi.com/US/en_US/ showing @media rules, font size, height, padding for the container.



*See e.g.,* www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 and screenshot of source code. The source code indicates that the display pairs are successively formed for automated layout of content items.



*Compare*    www.levi.com/US/en_US/clothing/men/shirts/camp-shirt/p/004PF0001

and screenshot of the source code.

160.    One or more components of the Levi's System comprised an apparatus (*e.g.*, server operated and/or controlled by Levi's) comprising an acceptance or rejection module operated by the processor to successively accept or reject placement of the selected one of a content item and a display container into a display container, based at least in part on one or more layout placement criteria (*e.g.*, aspect ratio, min-width, height, @media rules, padding, etc.).

84



*See*, *e.g.*, screenshots from source of www.levi.com/US/en_US/ showing aspect ratio such as 4/5, 16/9, etc., and min-width such as 1500px, 1025px, 767px, 420px, etc.

<style>.spinner-loading-skeleton[data-v-1251378b]{height:2500vh;background-image:url(/ngsa/images/loading.gif);background-size:98px 43px;background-position:center;background-attachment:fixed;background-repeat:no-repeat}.client-only-view-loading[data-v-f5fb87fa]{min-height:100vh}.page-not-found{min-height:60vh;text-align:center}.page-not-found__wrapper{display:flex;flex-direction:column;align-items:center;justify-content:center;padding:20px 0}.page-not-found--message{color:#000;text-transform:uppercase;font-family:InterstateWGL-Black,Helvetica,Arial,sans-serif;letter-spacing:.04em;font-size:24px;line-height:24px}.-bg-dark .page-not-found--message,.-bg-section-dark .page-not-found--message,.-bg-page-dark .-bg-section-transparent .page-not-found--message{color:#fff;fill:#fff}@media (min-width: 768px){.page-not-found--message{font-size:calc(24px + 16 * (100vw - 768px) / 672);line-height:calc(24px + 16 * (100vw - 768px) / 672)}}@media (min-width: 1441px){.page-not-found--message{font-size:40px;line-height:40px}}.page-not-found--message{letter-spacing:.02em}.page-not-found--sub-text{padding-top:36px;font-size:16px;… @media (min-width: 768px){.utility-bar__inner-wrapper[data-v-47c8737d]{height:100%}}@media (min-width: 1025px)…

*See also*, source of www.levi.com/US/en_US/ showing @media rules, font size criteria, height criteria, padding criteria for the container.



```
▼<div class="swatches-container" data-v-ca081650 data-v-24c36720>
  ▼<div class="swatches" aria-labelledby="swatchName" data-v-24c36720> flex
    ▼<ul class="mweb swatches-expand" data-v-24c36720> flex
       <!--[-->
      ▼<li class="swatch swatch-wrapper" code="A06370001" data-v-24c36720>
        ▼<button class="swatch-button-border" aria-label="Mineral Black" data-v-24c36720>
          ▼<span data-v-24c36720>
             <img loading="lazy" src="https://lsco.scene7.com/is/image/lsco/A06370001-swatch?$swatch$" class alt="Mineral Black" data-v-24c36720>
             <!---->
           </span>
         </button>
       </li>
      ▼<li class="swatch swatch-wrapper active" code="A06370058" data-v-24c36720>
        ▼<button class="swatch-button-border" aria-label="Naval Academy - Blue selected" data-v-24c36720>
          ▶<span data-v-24c36720>…</span>
         </button>
       </li>
      ▼<li class="swatch swatch-wrapper" code="A06370161" data-v-24c36720>
        ▼<button class="swatch-button-border" aria-label="Fungi - Brown" data-v-24c36720> == $0
          ▶<span data-v-24c36720>…</span>
         </button>
       </li>
      ▶<li class="swatch swatch-wrapper" code="A06370046" data-v-24c36720>…</li>
      ▶<li class="swatch swatch-wrapper" code="A06370000" data-v-24c36720>…</li>
      ▶<li class="swatch swatch-wrapper" code="A06370093" data-v-24c36720>…</li>
      ▶<li class="swatch swatch-wrapper" code="A06370165" data-v-24c36720>…</li>
      ▶<li class="swatch swatch-wrapper" code="A06370173" data-v-24c36720>…</li>
      ▶<li class="swatch swatch-wrapper" code="A06370172" data-v-24c36720>…</li>
       <!--]-->
     </ul>
     <!---->
   </div>
 </div>
</div>
```

*See e.g.*, www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 and screenshot of source code. The source code indicates that the display pairs are successively formed for automated layout of content items.



```
<div class="swatches-container" data-v-ca081650 data-v-24c36720> == $0
  <div class="swatches" aria-labelledby="swatchName" data-v-24c36720>
    <ul class="mweb swatches-expand" data-v-24c36720>
      <!--[-->
      <li class="active swatch swatch-wrapper" code="004PF0001" data-v-24c36720>
        <button class="swatch-button-border" aria-label="Dark Phantom - Black selected" data-v-24c36720>
          <span data-v-24c36720>
            <img loading="lazy" src="https://lsco.scene7.com/is/image/lsco/004PF0001-swatch?$swatch$" class alt="Dark Phantom - Black" data-v-24c36720>
            <!---->
          </span>
        </button>
      </li>
      <!--]-->
    </ul>
    <!---->
  </div>
</div>
</div>
```

*Compare* www.levi.com/US/en_US/clothing/men/shirts/camp-shirt/p/004PF0001 and screenshot of the source code.

161. Levi's directly infringed at least claim 1 of the '470 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

162. eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

**<u>Count VI – Infringement of United States Patent No. 7,822,646</u>**

163. eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

164. Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '646 Patent.

165.    One or more components of the Levi's System employed and provided a computer controlled method performed within a review-provider server.







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

```
<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>
```

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.

166.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of receiving a review request by said review-provider server for a reviewed subject (*e.g.,* a reviewed product) from a first networked computer (*e.g.,* a user device), said review request responsive to processing of

91

a client-side script by said first networked computer, said client-side script caused to be received by said first networked computer by a networked third-party server (*e.g.*, server operated and/or controlled by Levi's accessible by www.levi.com/US/en_US/).







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews on www.levi.com/US/en_US/ for a reviewed

product.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing the reviewed product.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

`<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>`

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.

167.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of selecting by said review-provider server one or more reviews of said reviewed subject responsive to said review request.

94







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing the reviewed product.

Object.defineProperty(window, "__LSCO_ENV__", { writeable: false, configurable: false, value: {"VITE_ADYEN_CSS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE_ADYEN_JS_PATH_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE_AFTERPAY_SCRIPT_PATH":"https://portal.afterpay.com/afterpay.js","VITE_ANONYMOUS_USER":"anonymous","VITE_API_PROXY":"","VITE_API_URL":"/nextgen-webhooks/","VITE_APP_EXCLUSIVE_LSA_DEEP_LINK_BASE_PATH":"https://levis-alternate.app.link","VITE_APP_EXCLUSIVE_LSE_DEEP_LINK_BASE_PATH":"https://mv50w-alternate.app.link","VITE_APPLE_PAY_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE_BRAINTREE_CLIENT_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE_BRAINTREE_DATA_COLLECTOR_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE_BRAINTREE_VENMO_SCRIPT_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE_BV_URL_LEVIS_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production","VITE_BV_URL_LEVIS_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse_implementation_production/production",…

…"bazaarVoiceEnabled":true…

<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching the product reviews.

168.    One or more components of the Levi's System employed and provided a computer controlled method comprising the step of sending by said review-provider server at least a portion of said one or more reviews to said first networked computer (*e.g.,* the user device).

97







*See*, *e.g.*, screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing reviews.

Object.defineProperty(window, "\_\_LSCO\_ENV\_\_", { writeable: false, configurable: false, value: {"VITE\_ADYEN\_CSS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE\_ADYEN\_JS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE\_AFTERPAY\_SCRIPT\_PATH":"https://portal.afterpay.com/afterpay.js","VITE\_ANONYMOUS\_USER":"anonymous","VITE\_API\_PROXY":"","VITE\_API\_URL":"/nextgen-webhooks/","VITE\_APP\_EXCLUSIVE\_LSA\_DEEP\_LINK\_BASE\_PATH":"https://levis-alternate.app.link","VITE\_APP\_EXCLUSIVE\_LSE\_DEEP\_LINK\_BASE\_PATH":"https://mv50w-alternate.app.link","VITE\_APPLE\_PAY\_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE\_BRAINTREE\_CLIENT\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE\_BRAINTREE\_DATA\_COLLECTOR\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE\_BRAINTREE\_VENMO\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE\_BV\_URL\_LEVIS\_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa\_implementation\_production/production","VITE\_BV\_URL\_LEVIS\_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse\_implementation\_production/production",…

…"bazaarVoiceEnabled":true…

```
<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async=""
src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_produ
ction/production/en_US/bv.js"></script>
```

*See*, e.g., script from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching the

product reviews.

169.    Levi's directly infringed at least claim 1 of the '646 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

170.    eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

### Count VII– Infringement of United States Patent No. 7,881,975

171.    eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

172.    Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringe (literally and/or under the doctrine of equivalents) at least Claim 1 of the '975 Patent.

173.    One or more components of the Levi's System employs and provides a method performed by a networked server (*e.g.*, server operated and/or controlled by Levi's accessible by www.levi.com/US/en_US/).

174.    One or more components of the Levi's System employs and provides a method comprising receiving a content request (*e.g.*, request for content from www.levi.com/US/en_US/ or related website or application) from a first networked computer (*e.g.*, user device accessing Levi's content).



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/ showing content request from a first networked computer.

175. One or more components of the Levi's System employs and provides a method comprising preparing content information (*e.g.*, product identification or product page) responsive to said content request.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/ showing the content request.



*See, e.g.*, screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing prepared content information.

176.     One or more components of the Levi's System employs and provides a method comprising accessing a client-side script executable by said first networked computer (*e.g.,* user device) to send a review request (*e.g.,* a request to view reviews) for a reviewed subject (*e.g.,* a reviewed product) to a review-provider server (*e.g.,* a Bazaarvoice server), said reviewed subject related to said content information.







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing review summary and reviews on

www.levi.com/US/en_US/ for reviewed subject.



*See, e.g.,* screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-

tabTM-vintage-t-shirt/p/A06370058 showing content information for reviewed subject.

Object.defineProperty(window, "\_\_LSCO\_ENV\_\_", { writeable: false, configurable: false, value: {"VITE\_ADYEN\_CSS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE\_ADYEN\_JS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE\_AFTERPAY\_SCRIPT\_PATH":"https://portal.afterpay.com/afterpay.js","VITE\_ANONYMOUS\_USER":"anonymous","VITE\_API\_PROXY":"","VITE\_API\_URL":"/nextgen-webhooks/","VITE\_APP\_EXCLUSIVE\_LSA\_DEEP\_LINK\_BASE\_PATH":"https://levis-alternate.app.link","VITE\_APP\_EXCLUSIVE\_LSE\_DEEP\_LINK\_BASE\_PATH":"https://mv50w-alternate.app.link","VITE\_APPLE\_PAY\_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE\_BRAINTREE\_CLIENT\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE\_BRAINTREE\_DATA\_COLLECTOR\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE\_BRAINTREE\_VENMO\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE\_BV\_URL\_LEVIS\_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa\_implementation\_production/production","VITE\_BV\_URL\_LEVIS\_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse\_implementation\_production/production",…

…"bazaarVoiceEnabled":true…

\<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa\_implementation\_production/production/en\_US/bv.js"\>\</script\>

*See*, e.g., script from https://www.levi.com/US/en\_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.

177. One or more components of the Levi's System employs and provides a method comprising sending said client-side script for execution to said first networked computer (*e.g.*, user device).

Object.defineProperty(window, "\_\_LSCO\_ENV\_\_", { writeable: false, configurable: false, value: {"VITE\_ADYEN\_CSS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.css","VITE\_ADYEN\_JS\_PATH\_V3":"https://checkoutshopper-live.adyen.com/checkoutshopper/sdk/5.65.0/adyen.js","VITE\_AFTERPAY\_SCRIPT\_PATH":"https://portal.afterpay.com/afterpay.js","VITE\_ANONYMOUS\_USER":"anonymous","VITE\_API\_PROXY":"","VITE\_API\_URL":"/nextgen-webhooks/","VITE\_APP\_EXCLUSIVE\_LSA\_DEEP\_LINK\_BASE\_PATH":"https://levis-alternate.app.link","VITE\_APP\_EXCLUSIVE\_LSE\_DEEP\_LINK\_BASE\_PATH":"https://mv50w-alternate.app.link","VITE\_APPLE\_PAY\_URL":"https://apple-pay-gateway-cert.apple.com/paymentservices/startSession","VITE\_BRAINTREE\_CLIENT\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/venmo.min.js","VITE\_BRAINTREE\_DATA\_COLLECTOR\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/data-collector.min.js","VITE\_BRAINTREE\_VENMO\_SCRIPT\_PATH":"https://js.braintreegateway.com/web/3.78.2/js/client.min.js","VITE\_BV\_URL\_LEVIS\_LSA":"https://apps.bazaarvoice.com/deployments/levis/lsa\_implementation\_production/production","VITE\_BV\_URL\_LEVIS\_LSE":"https://apps.bazaarvoice.com/deployments/levis/lse\_implementation\_production/production",…

…"bazaarVoiceEnabled":true…

```
<script class="dynamic-load-script-6bcf9a0f2c1942d668f0415eb813447c" async="" src="https://apps.bazaarvoice.com/deployments/levis/lsa_implementation_production/production/en_US/bv.js"></script>
```

*See, e.g.,* script from https://www.levi.com/US/en\_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing Bazaarvoice integration for fetching product reviews.







*See, e.g.,* screenshots from

https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-

shirt/p/A06370058 showing review summary and reviews on

www.levi.com/US/en_US/ for reviewed subject.

178.    One or more components of the Levi's System employs and provides a method comprising sending said content information (*e.g.,* product information) for presentation to a user of said first networked computer.



*See*, *e.g.*, screenshot from https://www.levi.com/US/en_US/clothing/men/shirts/red-tabTM-vintage-t-shirt/p/A06370058 showing prepared content information for reviewed subject.

179.   Levi's directly infringes at least claim 1 of the '975 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Levi's System.

180.   eComm Innovations has been damaged by Levi's infringement and suffered damages as a result of this infringement.

### Count VIII – Infringement of United States Patent No. 8,266,007

181.   eComm Innovations repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

182.   Levi's (or those acting on its behalf) made, used, sold, imported and/or offered to sell the Levi's Products and Services; and made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to the Levi's System in the United States that infringe (literally and/or under the doctrine of equivalents) at least Claim 1 of the '007 Patent.

183.   One or more components of the Levi's System employs and provides a method comprising receiving, by a server, a request for an advertisement (*e.g.*, "Buy Now" 501® Original Fit Men's Jeans) to be presented to a user of a social network (*e.g.*, a user of www.levi.com/US/en_US/).

*See, e.g.,* screenshot of

https://www.levi.com/US/en_US/?pixlee_album_photo_id=921985359 showing an

advertisement.





*See e.g.*, https://www.levi.com/US/en_US/new-arrivals/mens-new-arrivals/c/levi_clothing_men_new_arrivals_us/facets/feature-fit_name/478.

184.   On information and belief, one or more components of the Levi's System employes and provides a method comprising selecting, by the server, a member of the social network (*e.g.*, Brennendaniels) to visibly associate with the advertisement (*e.g.*, "Buy Now" 501® Original Fit Men's Jeans) based, at least in part, on a social distance between the user and the member in the social network.



*See*, *e.g.*, screenshot of

https://www.levi.com/US/en_US/?pixlee_album_photo_id=921985359 showing an

advertisement.

185.    One or more components of the Levi's System employs and provides a

method comprising sending, by the server, the advertisement for presentation to the user.



@Brennendaniels

every year before school started my oma (grandma) would take me shopping for a back-to-school fit. we almost always grabbed a pair of @le...

*See*, *e.g.*, screenshot of

https://www.levi.com/US/en_US/?pixlee_album_photo_id=921985359 showing an

advertisement.

186.   Levi's directly infringes at least claim 1 of the '007 Patent in violation of 35

U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Levi's

Products and Services; and making, using, selling, selling access to, importing, offering

for sale, and/or offering to sell access to the Levi's System.

187.   eComm Innovations has been damaged by Levi's infringement and

suffered damages and continues to suffer damages as a result of this infringement.

## JURY DEMANDED

188.    Pursuant to Federal Rule of Civil Procedure 38(b), eComm Innovations hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

eComm Innovations respectfully requests this Court to enter judgment in eComm Transaction's favor and against Levi's as follows:

a.  finding that Levi's has infringed one or more claims of the '635 patent under 35 U.S.C. § 271(a);

b.  finding that Levi's has infringed one or more claims of the '458 patent under 35 U.S.C. § 271(a);

c.  finding that Levi's has infringed one or more claims of the '081 patent under 35 U.S.C. § 271(a);

d.  finding that Levi's has infringed one or more claims of the '343 patent under 35 U.S.C. § 271(a);

e.  finding that Levi's has infringed one or more claims of the '470 patent under 35 U.S.C. § 271(a);

f.  finding that Levi's has infringed one or more claims of the '646 patent under 35 U.S.C. § 271(a);

g.  finding that Levi's has infringed one or more claims of the '975 patent under 35 U.S.C. § 271(a);

h.  finding that Levi's has infringed one or more claims of the '007 patent under 35 U.S.C. § 271(a);

i.   awarding eComm Innovations damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

j.   awarding eComm Innovations pre-judgment and post-judgment interest on the damages award and costs;

k.   declaring that Levi's has willfully infringed one or more claims of the Patents-in-Suit;

l.   declaring that this case is exceptional and awarding costs of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

m.   awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: April 14, 2026

Respectfully submitted,

By: */s/ Oded Burger*
Oded Burger*
New York State Bar No. 4910808
Erin Hadi* *(pro hac vice* to be filed)
DC Bar No. 90031321
oburger@daignaultiyer.com
ehadi@daignaultiyer.com
**DAIGNAULT IYER LLP**
8229 Boone Boulevard, Suite 450
Vienna, VA 22182
* Not Admitted to practice in Virginia

*Attorneys for Plaintiff Ecomm Innovations, LLC*